UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LUIS RODRIGUEZ,

                        Plaintiff,

v.                                                              6:11-CV-1436
                                                                (GTS/ATB)
SEAN BUBNIS, City of Utica Police Officer;
SAMUEL GEDDES, City of Utica Police Officer;
RICHARD ROE, Unknown City of Utica Police Officer;
JOHN DOE, Unknown City of Utica Police Officer;
and CITY OF UTICA, NEW YORK,

                        Defendants.
_____

APPEARANCES:                                OF COUNSEL:

GOLDEN LAW FIRM                             LAWRENCE W. GOLDEN, ESQ.
  Counsel for Plaintiff                     B. BROOKS BENSON, ESQ.
1412 Genesee Street
Utica, NY 13502

HON. WILLIAM BORRILL                        JOHN P. ORILIO, ESQ.
Corporation Counsel for City of Utica       JOAN K. HARRIS, ESQ.
  Counsel for Defendants                    MARK C. CURLEY, ESQ.
One Kennedy Plaza                           Assistant Corporation Counsel
Utica, NY 13502

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

     Currently before the Court, in this civil rights action filed by Luis Rodriguez ("Plaintiff")

against the City of Utica and four of its police officers ("Defendants"), is Defendants' motion for

summary judgment.  (Dkt. No. 22.)  For the reasons set forth below, Defendants' motion is

granted.

## I.     RELEVANT BACKGROUND

### A.     Plaintiff's Claims

Generally, liberally construed, Plaintiff's Amended Complaint asserts seven claims against Defendants arising from his arrest on the morning of August 2, 2009, in Utica, New York: (1) a claim of false arrest/false imprisonment under the Fourth Amendment and New York State law; (2) a claim of excessive force under the Fourth Amendment; and (3) a claim of deliberate indifference to his serious medical needs under the Fourteenth Amendment; (4) a claim of malicious prosecution under the Fourth and/or Fifth Amendments and New York State law; (5) a claim of municipal liability against the City of Utica; (6) a pendent claim of assault and battery under New York State common law; and (7) a pendent claim of intentional infliction of emotional distress under New York State common law.  (Dkt. No. 11 [Plf.'s Am. Compl.].)

### B.     Statement of Undisputed Material Facts

Unless followed by record citations, the below facts were asserted and supported by Defendants in their Local Rule 7.1 Statement, and either expressly admitted or denied without a supporting record citation by Plaintiff in his Local Rule 7.1 Response. (*Compare* Dkt. No. 22, Attach. 1 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 26, Attach. 7 [Plf.'s Rule 7.1 Response].)

1.     On August 1, 2009, at approximately 11:50 p.m., Plaintiff exited a birthday party at the Polish Veteran's Club on Francis Street in the City of Utica, New York.

2.     At approximately this time, more than 200 people exited the party with Plaintiff and began walking up Francis Street towards Oneida Square, walking both on the sidewalk and

in the road.[1]

     3.     Of the more than 200 people that were walking up Francis Street both on the sidewalk and in the road, more than 100 people were walking in the road.[2]

     4.     The street was completely blocked, and cars could only pass through "if they beeped their horn."

     5.     At approximately 12:15 a.m. on August 2, 2009, Utica Police Officers arrived at Oneida Square, including Defendant officers Sean Bubnis and Samuel Geddes. At approximately this time, Plaintiff saw "a whole bunch of police cars" approach with their lights flashing.[3]

     6.     Upon arrival, the officers took out their Tasers and directed the crowd to "get out of the road" and "go somewhere" else.[4]

     7.     Following the directive to get out of the road and go somewhere else, the crowd failed to do so.[5]  People did not move; instead, they just stood there.

---

[1]     (Dkt. No. 22, Attach. 5, at 22 [attaching page "20" of Plf.'s 50-h Examination, in which he stated "[o]ver 200 people" in response to the question "do you have any estimate or idea how large this crowd of young people was that was walking up Francis Street?" and in which he stated "They were both" in response to the question "was the crowd [of over 200 people] walking on the sidewalk, in the street, or both"]; Dkt. No. 22, Attach. 6, at 34 [attaching page "33" of Plf.'s EBT, in which he stated "at the time, I took a estimate guess. I assumed that it was just more than a 100 to 200 people, because the crowd just looked like it kept getting bigger and bigger every time you looked at it" in response to the question "Do you know how many people that was [in the Polish Veteran's Club]?"].)

[2]     (*Id*.; Dkt. No. 22, Attach. 5, at 22 [attaching page "20" of Plf.'s 50-h Examination, stating "I know it was over 100 people that were in that road"].)

[3]     (Dkt. No. 22, Attach. 6, at 41-42 [attaching pages "40" and "41" of Plf.'s EBT].)

[4]     (Dkt. No. 22, Attach. 5, at 25-26 [attaching pages "23" and "24" of Plf.'s 50-h Examination]; Dkt. No. 22, Attach. 4, at ¶ 12 [Plf.'s Am. Compl.].)

[5]     (Dkt. No. 22, Attach. 5, at 26 [attaching page "24" of Plf.'s 50-h Examination].)

8.      As police officers pointed their Tasers at the crowd in order to disperse it, Plaintiff was still in the area looking for his aunt's car.[6]

9.      As Plaintiff was standing near his aunt's car, a random person confronted him, and they started arguing.[7]

10.     As Plaintiff was engaged in the confrontation, two unknown police officers grabbed Plaintiff and pushed him up against a wall at the old Mr. Convenience store, across the street from the pizza parlor located on Oneida Street.

11.     One of the officers (alleged "upon information and belief" to be Defendant Bubnis, Geddes or Richard Roe) twisted and bent Plaintiff's arm behind his back, an action that Plaintiff contends caused him pain.[8]

12.     At this point Plaintiff's brother, Nicholean, arrived and attempted to break apart Plaintiff and the officers.  Nicholean yelled, "get the hell off my brother."

13.     In response, one or more officers grabbed Nicholean, who subsequently tried to break free of the officers' grasp and run away. The officers then tackled Nicholean and took him to the ground in order to arrest him.

---

[6]      (Dkt. No. 22, Attach. 5, at 26 [attaching page "24" of Plf.'s 50-h Examination]; Dkt. No. 22, Attach. 6, at 46 [attaching page "45" of Plf.'s EBT]; Dkt. No. 22, Attach. 4, at ¶ 12 [Plf.'s Am. Compl.].)

[7]      (*Compare* Dkt. No. 22, Attach. 1, at ¶ 9 [Defs.' Rule 7.1 Statement, citing page "45" of Dkt. No. 22, Attach. 6] *with* Dkt. No. 26, Attach. 7, at ¶ 9 [Plf.'s Rule 7.1 Response, admitting factual assertion]; *see also* Dkt. No. 22, Attach. 6, at 51 [attaching page "50" of Plf.'s EBT, in which he stated "He just confronted me about something, and . . . then I said something back to him, and when I got my chance to say something back, that's when I got grabbed by the police. . . . [W]e were . . . close to each other when he was, like, talking to me . . . ."].)

[8]      (Dkt. No. 22, Attach. 5, at 27-28 [attaching pages "25" and "26" of Plf.'s 50-h Examination]; Dkt. No. 22, Attach. 6, at 47, 54 [attaching pages "46" and "53" of Plf.'s EBT]; Dkt. No. 22, Attach. 4, at ¶ 12 [Plf.'s Am. Compl.].)

14.     The officer let go of Plaintiff in order to secure Plaintiff's brother, Nicholean.[9] Plaintiff then began to run towards his brother, telling the officers to get off his brother.

15.     As Plaintiff was running, his God-brother, Chris Pete, grabbed and wrapped up Plaintiff. Upon being grabbed by his God-brother, Plaintiff"was spazzing" because the officers had taken down his brother, Nicholean.

16.     Plaintiff broke free of his God-brother's grip and began running again, this time away from the scene.

17.     While running toward the corner of Hobart Street and Kemble Street, Plaintiff was yanked by the back of his collar and taken to the ground by an unknown Utica Police officer (alleged "upon information and belief" to be Defendant Bubnis or Geddes).[10]

18.     Plaintiff tried to get up off the ground two or three times, meeting resistence from one or more officers.[11]

19.     Before his final attempt to get up, Plaintiff was pushed forward and "that's when my hands and my chin scraped the ground . . . ."

---

[9]      (Dkt. No. 22, Attach. 5, at 28 [attaching page "26" of Plf.'s 50-h Examination, in which he stated "The tall one had my arm and he was bending my arm back. . . . [T]hey tackled [Nicolean] and threw him to the ground. . . .  And so then I started–they had him in the road. I ran down there."]; Dkt. No. 22, Attach. 6, at 47 [attaching page "46" of Plf.'s EBT, in which he stated "And then my brother said something again, and that's when they let me go, and they chased him. So when they started chasing him, . . . I didn't know what to do, so I ran"].)

[10]     (Dkt. No. 22, Attach. 5, at 29-30 [attaching pages "27" and "28" of Plf.'s 50-h Examination]; Dkt. No. 22, Attach. 6, at 49, 53-55 [attaching page "48," "52," "53" and "54" of Plf.'s EBT]; Dkt. No. 22, Attach. 4, at ¶ 13 [Plf.'s Am. Compl.].)

[11]     (Dkt. No. 22, Attach. 6, at 55, 56 [attaching pages "54" and "55" of Plf.'s EBT, in which he stated "I tried to get up three times," then describing one or two times in particular, the final time being after he was "pushed . . . forward" and his "hands and . . . chin scraped the ground"]; Dkt. No. 22, Attach. 4, at ¶ 13 [Plf.'s Am. Compl., alleging that "one or more of said Defendants held Plaintiff on the ground"].)

20.     After his final attempt to get up, Plaintiff was kicked one time in the face. "[B]ut I got back up, not, like, all the way up, just on my fingers a little bit, and that's when I seen the boot come."

21.     Plaintiff does not remember what the "kicking" officer looked like or who he was.

22.     Indeed, Plaintiff concluded that it was an officer who kicked him only from the fact that it was a black boot that struck him, "it was only police officers wearing black boots out there," and "nobody else was around me."[12]

23.     After Plaintiff was yanked to the ground, and before he was handcuffed, Plaintiff "kind of blacked out a little bit," and does not remember anything that was said, until he was in the police car.

24.     Subsequently, Plaintiff was handcuffed and placed in the police car by Defendants Bubnis and Geddes.

25.     After being placed in the police car, Plaintiff was driven to the police station.

26.     After arriving at the police station, Plaintiff was handcuffed to a bench near his grandmother.

27.     Only after talking to his grandmother at the police station did Plaintiff realize that the caps on his two front teeth were missing. "I didn't realize it, because I--because, like I said, I didn't feel blood, and I really wasn't talking."

28.     Additionally, the teeth that Plaintiff alleges to have been knocked out were only caps from an accident that occurred when Plaintiff was eleven years old. Further, these caps were supposed to be replaced by implants once Plaintiff reached the age of 21.

---

[12]     (Dkt. No. 22, Attach. 6, at 55 [attaching page "54" of Plf.'s EBT].)

29.     The only other physical injuries that Plaintiff sustained were (1) a bloody lip and mouth, (2) physical pain in the upper part of his lip until the end of August, and (3) a scar on his lip that "if you look real hard, you can see," and (4) teeth sensitivity.[13]

30.     Despite the fact that Plaintiff's caps were missing from his teeth, he never notified anybody at the Utica Police Station of the injury to his teeth (although he did "ask[] for some tissue [for his bloody mouth]").[14]

31.     Following the incident on August 2, 2009, Plaintiff never sought any type of psychiatric, psychological, or counseling service both before and after the 2009 incident.

### C.     Parties' Briefing on Defendants' Motion

#### 1.     Defendants' Memorandum of Law

Generally, in their memorandum of law, Defendants assert five arguments.  (Dkt. No. 22, Attach. 9 [Defs.' Memo. of Law].)

First, argue Defendants, Plaintiff has failed to show that any genuine issue of material fact exists as to any constitutional violation allegedly committed by Defendants for the following reasons: (a) with regard to Plaintiff's federal and state law claims for false arrest/false imprisonment, he fails to adduce admissible record evidence establishing that Defendant police officers lacked probable cause to arrest Plaintiff; (b) with regard to Plaintiff's federal and state law claims for malicious prosecution, he fails to adduce admissible record evidence establishing

---

[13]     (Dkt. No. 22, Attach. 5, at 46, 49 [attaching pages "44" and "47" of Plf.'s 50-h Examination]; Dkt. No. 22, Attach. 6, at 66, 77, 78 [attaching pages "65," "76" and "77" of Plf.'s EBT]; Dkt. No. 22, Attach. 4, at ¶¶ 14, 32 [Plf.'s Am. Compl.]; Dkt. No. 26, Attach. 4 [attaching Plf.'s medical records].)

[14]     (Dkt. No. 22, Attach. 6, at 60 [attaching page "59" of Plf.'s EBT].)

that Defendant police officers lacked probable cause to arrest Plaintiff, or that they acted in bad faith in commencing a proceeding against him; (c) with regard to Plaintiff's federal claim for deliberate indifference to his serious medical needs, he fails to adduce admissible record evidence establishing that his medical condition was sufficiently serious, or that Defendants acted with deliberate indifference (or even awareness) of that medical condition; (d) with regard to Plaintiff's federal claim for excessive force, he fails to adduce admissible record evidence establishing that Defendants acted unreasonably when Plaintiff resisted arrest, or even that it was the alleged kick (and not the prior push to the ground) that caused the injury to his mouth and teeth; and (e) Plaintiff's federal claim for excessive force should be dismissed on the alternative ground that he has failed to adduce admissible record evidence establishing that it was Defendants Bubnis or Geddes (and not another officer or one of the hundreds of non-officers in the area) who kicked him in the mouth, and in any event, actions by Defendants Bubnis or Geddes cannot render the City of Utica liable because those officers were not supervisors. (*Id*. at 9-21.)

Second, argue Defendants, even if a constitutional violation occurred, the individual Defendants are entitled to qualified immunity for the following reasons: (a) Defendant Bubnis is entitled to qualified immunity on Plaintiff's false arrest/false imprisonment claim because it is undisputed that Plaintiff was part of a group that was obstructing vehicular traffic and refused to comply with a directive to disperse, and that instead he argued with an unknown person in the street, which at least arguably gave Bubnis probable cause to arrest him; (b) Defendants are entitled to qualified immunity on Plaintiff's malicious prosecution claim because Plaintiff alleges no facts plausibly suggesting bad faith and, as explained above, the undisputed facts at

least arguably gave Defendants probable cause to arrest Plaintiff; (c) Defendants are entitled to qualified immunity on Plaintiff's claim of deliberate indifference to his serious medical needs, because the fact that he had minimal physical injuries and that he did not tell the officers of any potential serious medical condition rendered it objectively reasonable for them to believe that they were not acting with the requisite deliberate indifference; and (d) Defendants Bubnis and Geddes are entitled to qualified immunity on Plaintiff's excessive force claim, because a reasonable officer–confronted with a dangerous situation and an individual who was resisting arrest–could have believed in the lawfulness of his actions. (*Id.* at 21-26.)

Third, argue Defendants, even if a constitutional violation occurred and the individual Defendants are not entitled to qualified immunity, Plaintiff has failed to plead and prove the municipal liability of Defendant City of Utica on any of his federal claims under *Monell v. N.Y. City Dep't of Soc. Serv.* for the following reasons: (a) Plaintiff has failed to allege facts plausibly suggesting that Defendant City of Utica had in place a policy, practice of custom that caused the violation, and in any event he has failed to adduce admissible record evidence establishing that any such municipal policy was defective or was linked to the violation; (b) while the existence of a policy may be inferred from a custom of inadequate training, Plaintiff has failed to allege facts plausibly suggesting, and/or adduce admissible record evidence establishing, that Defendant City of Utica has failed to adequately train its police officers (specifically, that a constitution violation was foreseeable, repeatedly complained of, or recurring, and that the municipality failed to provide further training); and (c) while the existence of a policy may be inferred from a custom of inadequate supervision or discipline, Plaintiff has failed to allege facts plausibly suggesting, and/or adduce admissible record evidence establishing, that Defendant City of Utica has failed to

adequately supervise or discipline its police officers (specifically, that there was a pattern of constitutional violations by such officers, a deliberate failure to supervise or discipline those officers, and a causal relationship between the failure and the particular constitutional violation in question). (*Id*. at 26-32.)

Fourth, argue Defendants, the Court should dismiss Plaintiff's pendent state law claim of assault and battery, because Defendants had probable cause to arrest Plaintiff, they attempted to arrest Plaintiff, and they were met with resistance, prompting them to use a reasonable amount of force necessary to complete the arrest. (*Id*. at 32.)

Fifth, argue Defendants, the Court should dismiss Plaintiff's pendent state law claim of intentional infliction of emotional distress, because he has failed to adduce admissible record evidence establishing extreme and outrageous conduct by the individual Defendants, or any severe emotional distress experienced by Plaintiff. (*Id*. at 33.)

## 2. Plaintiff's Opposition Memorandum of Law

Generally, in his opposition memorandum of law, Plaintiff asserts seven arguments. (Dkt. No. 26, Attach. 8 [Plf.'s Opp'n Memo. of Law].)

First, argues Plaintiff, genuine disputes of material fact exist regarding his federal claim for excessive force, because (1) it is not intent but mere recklessness that is required for Defendants to be liable, (2) he has adduced admissible record evidence that Defendants Bubnis and Geddes were present at the scene of the alleged assault (and, indeed, "were the only police officers standing right next to plaintiff when he was kicked in the face by one of them"), and (3) uses of force less than the use of force in this action have survived summary judgment motions. (*Id*. at 3-8 [attaching pages "1" through "6" of Plf.'s Opp'n Memo. of Law].)

Second, argues Plaintiff, genuine disputes of material fact exist regarding his federal and state law claims for malicious prosecution, because (1) the district attorney's abandonment of the disorderly conduct charge against Plaintiff (and failure to subsequently re-file it) must be considered a favorable termination, (2) the existence of actual malice may be inferred from a finding of a lack of probable cause to initiate criminal proceeding, and (3) "[f]or the reasons set forth in the Affidavit of Plaintiff's attorney, there is at the very least an issue of fact that the defendant officers had any probable cause to arrest or prosecute Plaintiff for Disorderly Conduct." (*Id*. at 9-11 [attaching pages "7" through "9" of Plf.'s Opp'n Memo. of Law].)

Third, argues Plaintiff, genuine disputes of material fact exist regarding his federal and state law claims for false arrest/false imprisonment, because (1) "he had done nothing whatsoever . . . after walking with the crowd over to Oneida Square and then to his aunt's vehicle with his younger brother," and (2) in any event, he was detained before he was even under arrest for disorderly conduct. (*Id*. at 11-12 [attaching pages "9" and "10" of Plf.'s Opp'n Memo. of Law].)

Fourth, argues Plaintiff, genuine disputes of material fact exist regarding his state law claim for assault and battery, because, while the standard governing this claim is similar to the standard governing his federal claim for excessive force, the two claims differ in that, to establish this claim, he need not show the personal involvement of the individual Defendants in either the kick in his face or early apprehension against the wall, but need show only the personal involvement of *some* officer, which is sufficient to impute liability to Defendant City of Utica under the doctrine of *respondeat superior*. (*Id*. at 12-15 [attaching pages "10" through "13" of Plf.'s Opp'n Memo. of Law].)

Fifth, argues Plaintiff, genuine disputes of material fact exist regarding his state law claim for intentional infliction of emotional distress, because the use of an unreasonable seizure and excessive force by a civil servant who is duty bound to protect the community is "outrageous and intolerable." (*Id*. at 15-16 [attaching pages "13" and "14" of Plf.'s Opp'n Memo. of Law].)

Sixth, argues Plaintiff, Defendants are not entitled to qualified immunity as a matter of law based on the current record, because (1) the governing standard is not "almost probable cause" but "arguable probable cause," and (2) construing the facts of this case in favor of Plaintiff, the Court must credit his assertion that "he had done nothing whatsoever" before he was arrested. (*Id*. at 16-17 [attaching pages "14" and "15" of Plf.'s Opp'n Memo. of Law].)

Seventh, argues Plaintiff, genuine disputes of material fact exist regarding whether Defendant City of Utica is liable for the actions of its employee police officers on his state law claims based on the doctrine of *respondeat superior*, because, under New York law, a municipality may be held liable, under a theory of respondeat superior, for the state law torts of its employees committed in the course of their employment. (*Id*. at 17 [attaching page "15" of Plf.'s Opp'n Memo. of Law].)

### 3. Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, Defendants argue that Plaintiff's opposition papers are improper under Local Rule 7.1 of the District's Local Rules of Practice, and thus insufficient to defeat Defendants' motion for summary judgment, for four reasons. (Dkt. No. 28, Attach. 1 [Defs.' Reply Memo. of Law].)

First, argue Defendants, Plaintiff's "Attorney Affirmation" is fraught with legal arguments and factual assertions not within the personal knowledge of the affirmant. (*Id*. at 3-5.)

Second, argue Defendants, Plaintiff consistently relies on conclusory statements of law and/or fact (which is insufficient to defeat a motion for summary judgment).  (*Id*. at 5-7.)

Third, argue Defendants, Plaintiff's opposition papers fail to successfully demonstrate that the admitted use of force was more than *de minimis*, considering that the officers needed to effect the arrest of an individual who was actively resisting it, and that the caps that were broken were only temporary.  (*Id*. at 7-10.)

Fourth, argue Defendants, Plaintiff's opposition papers fail to establish a genuine dispute of material fact as to Defendant City of Utica's liability on any of Plaintiff's federal claims under a theory of *respondeat superior*.  (*Id*. at 10.)

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact."  *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the moving party has met this initial responsibility, the nonmoving party must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a),(c),(e).

A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party." *Anderson*, 477 U.S. at 248. As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted). As the Supreme Court has famously explained, "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

Implied in the above-stated burden-shifting standard is the fact that, where a nonmoving party willfully fails to adequately respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that nonmoving party is proceeding *pro se*.[15] (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[16] As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[17]

---

[15]     *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

[16]     *Cusamano*, 604 F. Supp.2d at 426 & n.3 (citing cases).

[17]     *Cusamano*, 604 F. Supp.2d at 426-27 & n.4 (citing cases).

Of course, when a non-movant has failed to respond to a movant's motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, the Court must (1) determine what material facts, if any, are *disputed* in the record presented on the movant's motion, and (2) assure itself that, based on those *undisputed* material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the movant's motion does is lighten the movant's burden on its motion.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a moving party's statement to be admitted, to the extent that those facts are supported by evidence in the record, where the nonmoving party has willfully failed to properly respond to that statement.[18]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law (submitted in support of its motion for summary judgment), the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[19] Stated another

---

[18] Among other things, Local Rule 7.1(a)(3) requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

[19] *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the

way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's

burden with regard to that argument is lightened, such that, in order to succeed on that argument,

the movant need only show that the argument possess facial merit, which has appropriately been

characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed

motion is unopposed and the Court determined that the moving party has met its burden to

demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279,

2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-

Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009)

(Suddaby, J.) (collecting cases).

**B.** **Legal Standard Governing Plaintiff's Claims**

Because the parties to this action have demonstrated, in their memoranda of law, an

accurate understanding of the relevant points of law contained in the legal standards governing

Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in

this Decision and Order, which (again) is intended primarily for review by the parties. (*See

generally* Dkt. No. 22, Attach. 9 [Defs.' Memo. of Law]; Dkt. No. 26, Attach. 8 [Plf.'s Opp'n

Memo. of Law]; Dkt. No. 28, Attach. 1 [Defs.' Reply Memo. of Law].)

---

arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-
0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's
failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a
concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

**III.    ANALYSIS**

**A.    Whether Plaintiff's Federal and State Claims of False Arrest/False Imprisonment Should Be Dismissed**

After carefully considering the matter, the Court finds that this claim should be dismissed for the reasons stated in Defendants' memoranda of law.  *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order.  The Court would add six points.

First, Plaintiff unwittingly argues that "he had done nothing whatsoever" before he was arrested. The fact that he failed to disperse from the street after he had been order to do so, and instead looked for his aunt's vehicle *where he became engaged in a confrontation with a stranger*, appears to have been precisely the circumstance relied on to constitute probable cause for his arrest.  (*See, e.g.,* Dkt. No. 26, Attach. 2, at 2 [attaching criminal complaint, stating "On August 2, 2009, at approximately 0:21 am, while in the parking lot of 1321 Oneida St., . . . the above said defendant did unlawfully, intentionally and knowingly cause public annoyance and alarm by engaging in a physical fight with several parties by acting in a violent, tumultuous and threatening manner"].)  *See also* N.Y. Penal Law § 240.20 ("A person is guilty of disorderly conduct when, with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . [h]e engages in fighting or in violent, tumultuous or threatening behavior . . . .").

Second, Plaintiff places too much reliance on the particular offense for which he was, and was not, arrested.  (*See, e.g.,* Dkt. No. 26, Attach. 7, at ¶ 18 [Plf.'s Rule 7.1 Response, arguing that he was never charged with resisting arrest].)  As Defendants argue in their reply memorandum of law, the probable-cause inquiry is not limited to the particular offense for which Plaintiff was arrested, but extends to any offense for which he could have been arrested.  (Dkt.

17

No. 28, Attach. 1, at 6-7.)  *See also Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) ("[A]

claim for false arrest turns only on whether probable cause existed to arrest a defendant[;] . . . it

is not relevant whether probable cause existed with respect to each individual charge, or, indeed,

any charge actually invoked by the arresting officer at the time of arrest.").  Here, the Court finds

that probable cause existed to arrest Plaintiff for disorderly conduct based on his actions even

other than his act of becoming engaged in a confrontation with a stranger.  *See* N.Y. Penal Law §

240.20 ("A person is guilty of disorderly conduct when, with the intent to cause public

inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . [h]e obstructs

vehicular or pedestrian traffic; or [h]e congregates with other persons in a public place and

refuses to comply with a lawful order of the police to disperse.").  The Court notes that it appears

undisputed that Plaintiff entered, and/or remained in, the road after he had been directed to leave

it.[20]

　　　Third, the fact that Plaintiff was physically detained at the wall before he was formally

informed of his arrest is immaterial under the circumstances, because probable cause existed to

arrest him (for disorderly conduct) *before* he was physically detained at the wall.[21]  Probable

---

[20]　　　Specifically, despite being directed to leave, Plaintiff did not do so; instead, he crossed Oneida Street to get to his aunt's car. (Dkt. No. 22, Attach. 5, at 26 [attaching page "24" of Plf.'s 50-h Examination, stating "they were telling people there was too many. Go somewhere. They started pointing tasers. People weren't moving. Everybody was just standing there. I'm looking for my aunt car and I see it. . . .  And I get across the street."]; Dkt. No. 26, Attach. 1, at 12 [attaching page "34" of Def. Geddes' Depo. Tr., stating "he was given a lawful order to leave"]; *see also, supra,* note 6 of this Decision and Order.)

[21]　　　The Court notes that an arrest can actually begin, of course, before it is formally announced.  *See Dunaway v. New York*, 442 U.S. 200, 212 (1979) ("The application of the Fourth Amendment's requirement of probable cause does not depend on whether an intrusion of this magnitude is termed an 'arrest' under state law.").

cause certainly existed moments later, when he fled the officers, returned to the melee, then repeatedly tried to get up off the ground as officers tried to keep him there in order to arrest him.

Fourth, the Court finds that it is immaterial whether, before the yanking of the back of his collar, Plaintiff was running away from the crowd or running to re-join it. This is because probable cause to arrest him for previously engaging in disorderly conduct was not somehow negated once he stopped confronting the stranger and/or started complying with the directive to disperse. *See, e.g., Demick v. Bretes*, 09-CV-10480, 2009 WL 4506437, at *7 (E.D. Mich. Dec. 1, 2009) ("Plaintiff's . . . eventual compliance with Defendant's command . . . may have . . . influenced the determination at the prosecutorial discretion stage, but as a matter of Fourth Amendment law, it does not negate the fact that probable cause existed based on Plaintiff's initial refusal to comply with Defendant's lawful command.").

Fifth, while an innocent intent (i.e., reaching his aunt's car) might have dissipated the probable cause for arrest for disorderly conduct based on two of the three above-referenced subsections of N.Y. Penal Law § 240.20 (had the officer heard and believed such an expression of intent), such an innocent intent would not have dissipated the probable cause for arrest for disorderly conduct based on the third subsection of N.Y. Penal Law § 240.20 (i.e., engaging in fighting or in violent, tumultuous or threatening behavior). In any event, at the very least, probable cause *arguably* did not dissipate under the circumstances, thus protecting the individual Defendants from liability as a matter of law by the doctrine of qualified immunity. (Dkt. No. 26, Attach. 1, at 12 [attaching page "34" of Def. Geddes' Depo. Tr., stating "Based on the tense and involving situation, I really didn't care. He was given a lawful order to leave"].) *Cf. Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir.1997) ("Once a police officer has a reasonable

basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.").

Sixth, in his opposition memorandum of law, Plaintiff attempts to show that a genuine dispute of material fact exists as to whether there was probable cause to arrest him based on "the reasons set forth in the Affidavit of Plaintiff's attorney." *See, supra,* Part I.C.2. of this Decision and Order. The Court accepts Defendants' argument regarding the impropriety of the affidavit of Plaintiff's counsel as either evidence or a vehicle for asserting legal argument.[22]

For all of these reasons, the Court dismisses Plaintiff's federal and state claims of false arrest/false imprisonment.

### B. Whether Plaintiff's Federal Claim of Excessive Force Should Be Dismissed

After carefully considering the matter, the Court finds that this claim should be dismissed for the reasons stated in Defendants' memoranda of law. *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order. The Court would add only the following analysis.

---

[22] *See* N.D.N.Y. L.R. 7.1(a)(2) ("An affidavit must not contain legal arguments but must contain factual and procedural background that is relevant to the motion the affidavit supports."); N.D.N.Y. L.R. 7.1(a)(3) ("[The record on a motion for summary judgment] does not . . . include attorney's affidavits."); Fed. R. Civ. P. 56 (c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *see, e.g., Road Dawgs Motorcycle Club of the United States, Inc. v. 'Cuse Road Dawgs, Inc.*, 679 F. Supp. 2d 259, 281-82 & n.54 (N.D.N.Y. 2009) (Suddaby, J.) (finding that defense counsel could not have personal knowledge of facts giving rise to lawsuit, so as to tender affidavit, without becoming witness to lawsuit pursuant to Rules 3.4 and 3.7); *Topliff v. Wal-Mart Stores East LP*, No. 04-CV-0297, 2007 WL 911891, at *23 (N.D.N.Y. Mar. 22, 2007) (Lowe, M.J.) ("[T]o the extent that Plaintiff's counsel is attempting to present arguments in refutation of the arguments advanced by Defendant . . . , the place for those arguments is in Plaintiff's opposition memorandum of law. . . . The Court does not have the duty to search through the numerous documents filed by Plaintiff in search of Plaintiff's legal argument.").

For the sake of brevity, the Court will not linger on the fact that (1) it is unclear if the injury to Plaintiff's mouth and teeth came from the kick in his face or the initial taking of him to the ground, (2) it is unclear if the kick came from a police officer or some non-officer wearing a black boot and previously unseen by Plaintiff, and (3) the sole record evidence that the kick was either intentional or reckless was the *timing* of the kick (i.e., as Plaintiff's face was near the ground and he was being subdued), which could equally be explained by the scuffle he caused by actively resisting arrest.[23]

More important is that there is no admissible record evidence that the kicking police officer was either Defendant Bubnis or Defendant Geddes. Defendant Geddes testified that he did not see an officer kick Plaintiff at any time. (Dkt. No. 26, Attach. 1, at 7 [attaching page "29" of Def. Geddes' Depo. Tr.].) Furthermore, there is no mention of either Defendant Bubnis or Defendant Geddes in Plaintiff's 50-h examination transcript. (*See generally* Dkt. No. 22, Attach. 5.) Nor is there any mention of either Defendant Bubnis or Defendant Geddes in Plaintiff's EBT transcript. (*See generally* Dkt. No. 22, Attach. 6.) The only mention of Defendants Bubnis and Geddes (with regard to force used against Plaintiff) is in Plaintiff's Amended Compliant. (Dkt. No. 11, at ¶¶ 12, 13.) However, two fatal problems exist with regard to those factual allegations. First, the pleading is not verified. (*Id*.) As a result, it does not have the force and effect of an affidavit.[24] Second, in any event, those officers' personal

_____

[23]     (Dkt. No. 22, Attach. 6, at 55-56 [attaching pages "54" and "55" of Plf.'s EBT, in which he stated "I feel like he draw back and kicked me" without any factual support in response to the question "did you see the officer draw back his foot and kick you or was it just in a scuffle?"].)

[24]     *See Torres v. Viscomi*, 03-CV-0796, 2006 WL 2728628, at *3 (D. Conn. Sept.25, 2006) ("The plaintiff has filed no affidavit in response to the motion for summary judgment and

involvement in the force used alleged against Plaintiff is based only "upon information and belief." (*Id.*) As a result, even if verified, the allegations would be insufficient to create a genuine dispute of material fact.[25]

Granted, Plaintiff's counsel has stated that Defendant Geddes testified in his deposition that he and Defendant Bubnis were "present right at the time that Plaintiff says he was kicked in his face while down on the ground." (Dkt. No. 26, at ¶ 9.) However, Plaintiff's counsel fails to cite the page of the transcript in which this testimony appears. (*Id.*) Nor does he even adduce a copy of such a page. (*See generally* Dkt. No. 26, Attach. 1.) Rather, Plaintiff's counsel adduces selected pages of that testimony which show, at most, that Defendant Geddes was in the *general vicinity* when Plaintiff was allegedly kicked, and that *subsequently* Defendants Geddes and Bubnis walked Plaintiff to a car. (*Id.* at 11-12, 14 [attaching pages "33," "34" and "36" of of Def. Geddes' Depo. Tr.].) Conspicuously missing from the record is any admissible evidence

---

his amended complaint is not verified. Thus, the plaintiff has not provided any evidence [with regard to his First Amendment claim] . . . ."); *Chisari v. Leeds, Morelli & Brown, P.C.*, 02-CV-8836, 2004 WL 1588161, at *1, n.2 (S.D.N.Y. July 16, 2004) ("As Chisari's initial and amended complaints are not verified, they may not serve as affidavits for summary judgment purposes.").

    [25]    *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[Rule 56(e)'s] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'. . . [Furthermore, the Rule's] requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavits also means that the affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir.1988) ("[Defendant's] affidavit states that it is based on personal knowledge or upon information and belief . . . . Because there is no way to ascertain which portions of [Defendant's] affidavit were based on personal knowledge, as opposed to information and belief, the affidavit is insufficient under Rule 56 to support the motion for summary judgment."); *cf. Applegate v. Top Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir.1970) (rejecting affidavit made on "suspicion . . . rumor and hearsay"); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y.1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd*, 995 F.2d 1147 (2d Cir.1993).

establishing that either Defendant Geddes or Defendant Bubnis was close to Plaintiff at the time

he was allegedly kicked, or that either of them had a reason to foresee the kick and a reasonable

opportunity to prevent it.[26]

Finally, in the alternative, the Court finds that there is no admissible record evidence that

the use of force was unreasonable.  It is undisputed that, at the time of the kick, Plaintiff was

repeatedly trying to get up off the ground as officers were trying to keep him there in order to

arrest him for disorderly conduct.  It is also undisputed that, moments before the kick, Plaintiff

had been engaged in a confrontation with a stranger in the street.  Finally, it is undisputed that, at

that location, officers were trying to get a crowd of people (of which Plaintiff had been a

member) to disperse.  Simply stated, while Plaintiff's injury was certainly unfortunate, his choice

to resist arrest at that particular time and place rendered the use of force against him (whether it

was accidental or reckless) reasonable.  *See Fennell v. Gilstrap*, 559 F.3d 1212, 1219 (11th Cir.

2009) ("Gilstrap was in the room for 15 seconds, during which time six officers were unable to

secure and handcuff Fennell. Gilstrap's decision to kick Fennell in the arm was not a malicious

and sadistic escalation of force, even if the kick accidentally landed on Fennell's face.

Accordingly, the relationship between the need for force created by Fennell's conduct and the

force Gilstrap decided to use favors a conclusion that the force in this case was not malicious and

sadistic, but rather a good faith effort to maintain or restore discipline in a difficult situation.").

---

[26]     As for any excessive-force claim against Defendants John Doe or Richard Roe, Plaintiff does not identify those individuals in his papers in opposition to Defendants' motion. (*See generally* Dkt. No. 26.)  The Court notes that the deadline for amended pleadings expired on August 23, 2012, and the deadline for discovery expired on September 30, 2013.  (Dkt. No. 8, at 1; Text Order filed July 29, 2013.)  However, Plaintiff never requested leave to re-open the amended-pleading filing deadline and file a Second Amended Complaint identifying Defendants John Doe or Richard Roe.

Certainly officers of reasonable competence could disagree on this issue, thus protecting the individual Defendants from liability as a matter of law by the doctrine of qualified immunity.

For all of these reasons, the Court dismisses Plaintiff's federal claim of excessive force.

## C.   Whether Plaintiff's Federal Claim of Deliberate Indifference to a Serious Medical Need Should Be Dismissed

After carefully considering the matter, the Court finds that this claim should be dismissed for the reasons stated in Defendants' memoranda of law. *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order. The Court would add only the following analysis.

In his opposition memorandum of law, Plaintiff does not respond to Defendants' argument challenging this claim. *See, supra,* Part I.C.2. of this Decision and Order. In this District, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & nn.2, 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases). Here, Defendants have met this modest burden.[27]

---

[27]   The Court notes that Plaintiff asserts that, in the police car, he said "My teeth," to which an officer responded, "That's not our problem." (Dkt. No. 22, Attach. 6, at 66 [attaching page "65" of Plf.'s EBT].) The Court will set aside the incongruity of this testimony with the undisputed material fact that he did not learn of the injury to his teeth until he reached the police station. More important is the fact that the record contains no admissible record evidence that Plaintiff said anything else about his teeth.

In the alternative, the Court can, and does, deem the challenged claim abandoned (regardless of the facial merit of the unresponded-to argument). *See Jackson v. Federal Exp.*, No. 12-1475, 2014 WL 4412333, at *6 (2d Cir. 2014) ("Where a partial response to a motion is made–i.e., referencing some claims or defenses but not others–a distinction between *pro se* and counseled responses is appropriate. In the case of a *pro se*, the district court should examine every claim or defense with a view to determining whether summary judgment is legally and factually appropriate. In contrast, in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned. In all cases in which summary judgment is granted, the district court must provide an explanation sufficient to allow appellate review. This explanation should, where appropriate, include a finding of abandonment of undefended claims or defenses."). The Court notes that, in his opposition affidavit, Plaintiff's counsel expressly denies that Plaintiff is asserting this claim. (Dkt. No. 26, at ¶ 3.)

For all of these reasons, the Court dismisses Plaintiff's federal claim of deliberate indifference to his serious medical needs.

### D. Whether Plaintiff's Federal and State Claims of Malicious Prosecution Should Be Dismissed

After carefully considering the matter, the Court finds that this claim should be dismissed for the reasons stated in Defendants' memoranda of law. *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order. The Court would add only two points.

First, as explained above in Part III.A. of this Decision and Order, the Court finds that probable cause (or, at the very least, arguable probable cause) existed to arrest Plaintiff for disorderly conduct under three different subsections of N.Y. Penal Law § 240.20.

Second, the lack of malice is further evident from the fact that the individual Defendants chose not to charge Plaintiff disorderly conduct under two of the three subsections of § 240.20, and that they chose not to charge him with resisting arrest under N.Y. Penal Law § 205.30 ("A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person.").

For all of these reasons, the Court dismisses Plaintiff's federal and state claims of malicious prosecution.

**E.     Whether Plaintiff's Claim of Municipal Liability Against Defendant City of Utica Should Be Dismissed**

After carefully considering the matter, the Court finds that this claim should be dismissed for the reasons stated in Defendants' memoranda of law.  *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order.  The Court would add only two points.

First, in his opposition memorandum of law, Plaintiff does not respond to Defendants' argument challenging his *federal* claims against Defendant City of Utica, under *Monell v. N.Y. City Dep't of Soc. Serv*.  *See, supra,* Part I.C.2. of this Decision and Order.  Indeed, in his opposition affidavit, Plaintiff's counsel expressly denies asserting any federal claims against Defendant City of Utica under *Monell*.  (Dkt. No. 26, at ¶ 3.)  As a result, Defendants' argument has been lightened, such that, in order to succeed on it, they need only show that it possess facial merit.  *See, supra,* Part III.C. of this Decision and Order.  The Court finds that Defendants have done so, for the reasons stated in their memoranda of law.

Second, instead, Plaintiff asserts a *respondeat superior* argument with regard to his state tort claims against Defendant City of Utica.  While the Court is inclined to accept this argument, the Court notes that the argument applies to only two of Plaintiff's state claims against

Defendant City of Utica--one for assault and battery, and the other for intentional infliction of emotional distress. This is because Plaintiff's other state claims–for false arrest/false imprisonment and malicious prosecution–are governed by the same legal standards as are his federal claims for false arrest/false imprisonment and malicious prosecution, and are thus dismissed for the reasons set forth above in Parts III.A. and III.D. of this Decision and Order.

For all of these reasons, the Court dismisses Plaintiff's federal claims against Defendant City of Utica.

### F.      Whether Plaintiff's State Claim of Assault and Battery Should Be Dismissed

After carefully considering the matter, the Court finds that this claim should be dismissed for the reasons stated in Defendants' memoranda of law. *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order. The Court would add only two points.

First, with regard to Plaintiff's state claim of assault and battery against the individual Defendants, the Courts relies on its analysis in Part III.B. of this Decision and Order (regarding Plaintiff's federal claim of excessive force).

Second, with regard to Plaintiff's state claim of assault and battery against Defendant City of Utica, Plaintiff seeks to save this claim from dismissal based on the (purported) evidence that there was an assault and battery by *some* Utica police officer (and the doctrine of *respondeat superior*). The problem is that, to the extent that the referenced assault and battery was the kick in Plaintiff's face, the Court has already found that there is no admissible record evidence that the kick was unreasonable, under the circumstances. *See, supra,* Parts III.B. of this Decision and Order. Moreover, to the extent that the referenced assault and battery was the pushing of Plaintiff against a wall and twisting/bending of his arm behind his back, the Court finds no

admissible record evidence that the use of force was unreasonable, under the circumstances, including (1) the fact that moments before the kick, Plaintiff had been engaged in a confrontation with a stranger in the street, (2) the fact that, at that location, officers were trying to get a crowd of people (of which Plaintiff had been a member) to disperse, and (3) the fact that, at the time of the use of force, Plaintiff was "flipping out" and his brother Nicholean tried to "break [Plaintiff and the officer] apart."  (Dkt. No. 22, Attach. 5, at 28 [attaching page "26" of Plf.'s 50-h Examination].)[28]

For all of these reasons, the Court dismisses Plaintiff's state claim of assault and battery.

## G.    Whether Plaintiff's State Claim of Intentional Infliction of Emotional Distress Should Be Dismissed

After carefully considering the matter, the Court finds that this claim should be dismissed for the reasons stated in Defendants' memoranda of law.  *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order.  The Court would add only two points.

First, in his opposition memorandum of law, Plaintiff does not respond to Defendants' argument that he has failed to adduce admissible record evidence establishing any severe emotional distress experienced by him.  *See, supra,* Part I.C.2. of this Decision and Order.  As a result, Defendants' argument has been lightened, such that, in order to succeed on it, they need

---

[28]    While the Court by no means relies exclusively on this fact, the Court notes that, based on the current record, this particular use of force, while painful, did not result in any fracture, sprain, laceration, abrasion, bruising, swelling, redness or even lasting soreness in Plaintiff's hands, wrists, arms, shoulders or neck.  (*See, e.g.,* Dkt. No. 22, Attach. 5, at 47 [attaching page "45" of Plf.'s 50-h Examination, stating "I didn't hurt my shoulder"]; Dkt. No. 26, Attach. 4, at 3-4 [attaching Plf.'s medical records from August 2009].)  *See also Davidson v. Murray*, 371 F. Supp.2d 361, 375-76 (W.D.N.Y.2005) (holding that intense pain caused by officers' twisting of plaintiff's tightly handcuffed arms and pushing him against wall, during elevator ride, was legally insufficient to support an excessive force claim).

only show that it possess facial merit.  *See, supra,* Part III.C. of this Decision and Order.  The

Court finds that Defendants have done so, for the reasons stated in their memoranda of law.

Second, the Court rejects this claim on the alternative ground that the record is bereft of

any admissible evidence establishing that the boot that struck his face was *maliciously* placed

there by a police officer.  For example, there was no repeat blow, no disparaging remark, not

even a determined facial expression.

For all of these reasons, the Court dismisses Plaintiff's state claim of intentional infliction

of emotional distress.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 22) is

**GRANTED**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 11) is **DISMISSED**.

Dated: November 13, 2014
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge